## CHARLES F. WARE

*v.*

## JOHN H. CHEW.

S. owned two adjoining city lots; one of them had a dwelling-house on; the other was vacant; he leased the former for five years to W. for a dwelling and to carry on his manufacturing business; W. took possession; S. then sold both lots to C.; but before he took title C. told W. he thought of buying and building, and asked him if he had any objections, when W. said no, and added that his rights under the lease must be respected,; C. made excavations for a cellar, and commenced a wall for a one-story building, fifteen feet above the surface of the ground, which, if erected, will be within three feet and eight inches of the windows in the rear part of W.'s house, and fifteen inches above the top of those windows. Upon a bill filed to restrain C. from building so as to obstruct the light and air from entering said windows—*Held*, that in such case the statute of frauds was a bar to an unexecuted parol agreement, if one had been established.—*Held*, also, that no agreement had been established which included the light and air.—*Held*, likewise, that when W. told C. that his rights under his lease must be respected, C. had complete notice, and that all of the talk between the parties thereafter did not work an equitable estoppel; and *Held*, further, that when a stone wall is built so near to a window the court will take judicial notice that it will materially diminish the passage of light and air.

Bill for injunction.

*Mr. J. J. Crandall,* for complainant.

*Mr. H. A. Drake* and *Mr. S. H. Grey,* for defendant.

BIRD, V. C.

Smith was the owner of two city lots adjoining each other; on one of them was a dwelling-house, covering its entire width in front, with an extension back, containing four or five windows in the first story, opening to the eastward over four feet of the lot on which the house stood, and over the other lot. There were two windows in the main building, opening also to the eastward. There were no windows on the west side of this

building.   The other lot was vacant, so that light and air were
freely admitted to all of the said windows of the dwelling over
the vacant lot.

Smith leased the dwelling-house and lot to Ware, who occu-
pies it with his family, and also with machinery and employees
in the business which he carries on.   After Ware had occupied
the premises for more than a year, Smith sold and conveyed
both lots to Chew.   Chew has made excavations for a building
the entire width of the vacant lot, and one hundred feet deep, so
that if he builds the entire space will be covered, leaving no
passage-way between the houses.   Chew has also commenced
laying the foundation walls.   Ware has filed his bill, and asks
the court to restrain Chew from erecting said building, alleging
that it will obstruct the light and air, which are necessary for
his comfortable enjoyment of the premises which he occupies
under his lease.   That Ware is entitled to the relief he prays
for is not disputed, unless he has bound himself, by an agree-
ment to the contrary, or by his acts and acquiescence is estopped
from setting up the law which would otherwise protect him.
*Sutphen* v. *Therkleson, 11 Stew. Eq. 318.*   This view of the law
in this state has long been recognized and acquiesced in.   It may
be said to be as definite a branch of our real estate law as any.

But the defendant offers to show two agreements, or the equiv-
alent of agreements, by which he claims that Ware is bound.
First, he shows that, at the time Smith leased the lot to Ware,
Ware requested Smith to allow him to use the vacant lot, which
Smith expressly refused to do, and gave, as a reason for his re-
fusal, the fact that he might want to build on the lot, if he kept
it, and, if he did not keep it, he might want to sell it, and the
purchaser might want to build.   This testimony was objected to,
upon the ground of its being in contradiction of a written agree-
ment—the lease.   I think the testimony is admissible, but only
upon the ground of fraud.   It would seem to be a very great
wrong for Ware to acquire valuable rights without consideration ;
and if it were to be shown that the very point now in dispute
was involved in that part of the agreement which is said to be in
parol, and that it was distinctly understood that Ware should

have no enjoyment whatsoever from or over the vacant lot, in case it should be built upon, for him now to be protected, in defying that agreement, in a court of equity. When parol testimony becomes essential to prevent fraud or wrong-doing, no writing is so sacred as to render such testimony inadmissible. Courts are willing that parties who bind themselves by written instruments shall have the full benefit of all that they contracted for; but if it is made to appear that a party makes his claim under such instrument by fraud, or claims that which it is made to appear by parol was expressly excluded, he will not be sustained in a court of equity. This court will not, under such circumstances, help a man to enjoy that for which he paid no consideration. *Juilliard* v. *Chaffee, 92 N. Y. 529*; *Naumberg* v. *Young, 15 Vr. 331*; *Ryle* v. *Ryle, 14 Stew. Eq. 582, 597*; *Merrit* v. *Merrit, May Term, 1883*.

But, while the testimony is admissible, it is insufficient as a bar to the rights which Ware now claims; for it is not made to appear what sort of a structure Smith proposed to build; whether one like the building Chew threatens to build, or one like the house on the lot now occupied by Ware. I cannot perceive that the simple refusal of allowing Ware to use the vacant lot because Smith might want to build, without showing the character or dimensions of the building which he might propose to erect, so that it should appear that he intended to place a structure there which would obstruct light and air, is sufficient to prevent Ware from maintaining this bill.

Second, it is said that Ware entered into an agreement with Chew, in and by which he surrendered all and every right which he had to light and air over the vacant lot. The alleged agreement, it should be noted, made no reference to light or air, neither of them having been mentioned. The parties met and talked about making a passage-way for Ware from the rear part of his house to the street in front. Ware wanted it made upon the vacant lot, and under the building Chew was about to erect; but this Chew would not consent to, and suggested that the same kind of a passage-way be made under the house and through the cellar of the premises leased and occupied by Ware. Chew says

Ware consented to this, and also consented, in order to bring
about the proposed change, to make some alterations in his cellar.
All this Ware emphatically denies.    Ware says they had inter-
views about it, and that Chew proposed the passage-way through
the cellar of his house, but that he never assented to it.    Ware's
son was present at two of the interviews, and his statements in-
crease the probabilities in favor of Ware's denial of any agreement.
Again, it is urged that Ware admitted such an agreement in an
interview with Smith.    Smith says that he spoke to Ware about
it, and told him that he understood it was all arranged, and that
Ware said : " Yes, that was so," and also says that Ware said he
would not use his house for carrying out slops and garbage, but
would move out first, which certainly is not consistent with the
claim of a settlement.    But, up to this time, nothing seems to
have been involved in the interviews between Ware and Chew
but a passage-way from the rear.    But, as more of the conduct
of the parties, as well as their conversations upon this point, will
be adverted to again, it is not necessary that I here enlarge, since
a well-settled rule of law disposes of this branch of the case.

In case Chew supposed that he, in his conversations with
Ware, was making an agreement by which Ware was to surrender
all his rights to light and air, it is claimed that he cannot show
any such agreement, it not being in writing, such writing being
required by the statute of frauds.    Plainly, this would seem to
be such an interest in and concerning lands and real estate as the
statute contemplates.    *Brown* v. *Brown, 6 Stew. Eq. 650.*

And there is still another circumstance which throws some light
on this branch of the discussion.    After Chew had purchased,
and had made the excavation for his building, Ware employed
counsel, who spoke to Chew, and warned him that he could not
erect the wall of his building where he proposed, because it would
obstruct the light and air which Ware was entitled to under his
lease.    Chew said he had made an arrangement with Ware.    But
very shortly afterwards, on the same day, and while Ware and
his counsel were yet consulting, Chew went to them and said :
" If there is going to be trouble about this, what will you take
to get out ? "    Either Ware or his counsel said they would let

him know, and soon thereafter, on the same day, made known to Chew the sum which would be satisfactory, and that was $500 to move, or $300 to re-arrange his machinery and to remain.   But Chew refused to pay the price.   And then the bill was immediately filed.   I cannot but conclude from this that Chew knew there was no binding agreement between the parties, or that the agreement, if any, had not embraced the important matter of light and air ; for, if these matters had all been disposed of by a good contract, for a proper (I don't say valuable) consideration, he certainly would not have offered to give something additional, which he signified his willingness to do by asking Ware what he would take.   My judgment, therefore, is that, so far as this branch of the inquiry has any bearing at all, it is against the allegation that the parties had settled their differences by an agreement.

But, thirdly, it is urged, with great force and apparent conclusiveness, that Ware is estopped, because he allowed all these things to take place, without giving direct and formal notice of his rights, and from the first standing upon them.   In the outset, I should say that, in my view, the defendant's counsel present the doctrine of equitable estoppel in its true light.   The question is, Has the defendant shown such a case as will justify me in applying the doctrine ?

On this head, the principal facts are as I now state them : Before Chew purchased these two lots, but after he had secured the promise of a refusal from Smith, he called on Ware and informed him that he was about to buy them, and to build on the vacant one.   Ware asked him what he was going to build, and Chew told him a building twenty by one hundred feet and one story high, to be used for a store, the number of feet high not being given.   Chew says he asked Ware if he objected, and that Ware said, "No; only you will cut off my alley-way."   I do not understand that Ware admits saying this; but it is very clear that he had no right of way over the surface, and doubtless Chew knew it.   But Ware says that, when he was asked if he had any objections, he replied, no, only that his rights under

32

his lease were to be respected. This important fact is also sworn to by the son of Ware, and is not denied by Chew.

Ware, in the very beginning, thus told Chew that he should claim all his rights under the lease. This should not be lost from view. Chew thereby had the completest notice of the lease and of all the rights of Ware. Chew then proceeded at his own risk, if no change in the situation occurred afterwards.

From the point of time when Ware demanded all his rights under the lease, they talked about the construction of an alley or passage-way, as I have above mentioned. But it is clear that the passage-way was the only subject talked about. Once after this the parties went into the cellar of the leased premises and had some talk about the same way, or, if the talk was not between them, it was between Chew and his servants, in Ware's presence, so that he was as much bound in equity as though he participated, in case anything was said which required him to speak. Ware, however, says that he was present and heard Chew talking to his men about moving the coal and digging a trench and putting up a partition, as though it was all his own. This interview in the cellar was after Chew had accepted the deed, and is not so material on the question of estoppel as what took place between the parties before. And the same may be said of what transpired at the time Chew commenced his excavation and during its continuance. The deed was accepted December 7th, 1887. On the 12th, Chew commenced his excavation, and on the 19th the bill was filed. Ware had knowledge of this work. Besides this knowledge, he or some member of his family dug up and moved from the vacant lot some flowers and shrubbery, and thereby it is claimed recognized Chew's right to build. This was pressed, but I can see no such consequences; it was nothing more than a recognition of the ownership of the title in Chew. As it stands before me, it has no relation to the question of light and air. And it is also urged that Ware said to Chew, when the latter commenced digging, that he was more than four inches (the space which the charter of the city has attempted to condemn or confiscate for party walls) on him, to which Chew answered that he was not, and that then Ware said, "All right,"

and this is proof of acquiescence.   But Ware distinctly says that all he said in reply was, " Well, we will see."

But, as I have intimated, all the acts or declarations of Ware after Chew accepted his title are, in my judgment, of small importance, and should have but little, if any, influence in the determination of the question.   The point at issue, the question of estoppel, must be determined by what took place between the parties at their first or second meeting.   Then it was that Ware told Chew that he had no objection to his building, but that his rights under his lease must be respected.   It seems to me that this fact illuminates the whole case and relieves it of all doubt. I cannot conceive that Ware could have done more.   His claim was as comprehensive as his title by the lease, and was an infinitely safer course for him than any attempt at particulars.   I do not forget that Chew says that Ware wanted an alley-way ; but if he specified this one thing as a convenience, there is no doubt whatever but that he also stood upon all his other legal rights.

Chew having thus been so fully warned by Ware that he (Ware) would insist upon all that his lease gave him, it seems to be my duty to conclude that nothing took place afterwards between them to justify me in saying that Ware abandoned his just rights, or so acted or talked as to lead Chew into the honest belief that he had abandoned them.   An equitable estoppel is not therefore established.

In justice to the learned counsel for Chew, I should advert to one branch of their argument, viz. : a waiver by Ware of all his rights to light and air by his laches in waiting until the excavation was about made, before he made them known.   If the law would hold him to any greater particularity than the presentation of his lease, then, in my opinion, Ware was prompt, and acted within a reasonable time.   It would be quite unworthy to hold, after Chew had been so notified, that he could proceed without peril, and that any single distinct step in advance would secure him against all the rights of Ware.   And it would be equally unworthy to hold that Ware, besides the general claim named, should at any and every instant know all and every of his rights, and distinctly assert them at every advance or

encroachment of his adversary, and that, too, instantaneously. Our lawful property rights are not held by any such frail or uncertain tenure.

When Chew commenced to dig four inches on the ground which his grantor had leased to Ware, and within three feet and eight inches of the windows of Ware's back building, in which he was carrying on his manufacturing, then it was, or soon after, that Ware began to realize that a brick wall so near to his windows, and fifteen inches higher than his windows, would materially obstruct his light and air. I think he acted within time. But if, after this first insistment of his rights under his lease, he was slow to act, it ought not to be charged more to his folly than the aggressive conduct of Chew to his daring. Take the principal case of *Pickard* v. *Seers*, *6 Ad. & El. 469*—had the real owner declared his interest in the property before the sale, he would not have been estopped.

Again, the defendant says, in case all else will not sustain him, it is surely sufficient to show that the complainant has offered no proof that the erection of the wall, as proposed, will so obstruct light and air as to injure him, he being only an occupant. In other words, it is urged that it was the duty of the complainant to show, by the examination of witnesses, that such a wall would interfere with the proper or rightful enjoyment of his home and place of business. I think the complainant has fully established this branch of his case without such additional proof. That the rear part of his house, and the windows in it, are located as stated in the bill, is admitted. That the proposed new wall will be, if built, within three feet and eight inches of those windows, and at least fifteen inches above them, is also admitted. Does the court need more to know the truth? If the windows were closed in by a wall directly against the face of them, would the court be sustained in presuming that all light and air would be obstructed? Clearly so. And I believe the presumption that the wall in question will materially diminish light and air, is equally well based. It must be that there are some laws of nature which courts can take judicial notice of, and give effect to without the aid of experts or philosophers. Could it possibly increase my

---

conviction were a score of experts to swear that neither the sun's rays nor the strongest winds could penetrate an eight-inch wall of bricks and mortar?

Beyond doubt, there may arise many cases where it would not be at all certain that injury is done by such structures, at much greater distances from the house claiming the easement. Then, of course, the burden would be on the complainant. But, in the case before me, all will see that Chew can have nothing but reflected light until the morning sun is well up in the heavens. And all will as plainly see that the amount of that reflected light is diminished to the extent that the wall cuts off the entire eastern horizon ; and also that three feet and eight inches is but a small space indeed compared to the entire outlook when unobstructed. This, indeed, is so marked or distinguishable that one of the counsel for Chew felt obliged to admit that when the sun is in the *west* the light will be diminished if the defendant builds his wall.

I will advise that an injunction do issue, restraining the defendant from erecting any building on said premises, named in said bill as lot No. 216, during the continuance of said lease, that will materially diminish the passage of light and air to the windows in the said rear part of the building leased to the complainant. The complainant is entitled to costs.